OPINION OF THE COURT
William D. Friedmann, J.
Defendant moves for an order pursuant to article 18-B of the County Law authorizing the professional services of an expert in identification and memory.
The indictment charges the defendant with two counts of murder in the second degree and related crimes. These charges arose out of an alleged shooting in a Chinese restaurant on July 16, 1989 in which the defendant allegedly killed two men and wounded two others.
Defendant now seeks to retain the services of Dr. Robert Buckhout, a psychologist specializing in the field of perceptual psychology and memory. In particular, defendant requests this specialist to testify as to those perceptual factors which influence memory and eyewitness identification.
To support his position, the defendant maintains that this case rests upon the testimony of a single eyewitness who allegedly observed the defendant for a brief period of time under great emotional stress. Under the circumstances, it is reasoned that the testimony of a trained psychologist would be relevant and assist the jury in its deliberations.
The People oppose this application and argue that the testimony of Dr. Buckhout would allow him to preempt the fact-finding function of the jury by ultimately substituting his expert opinions for the jury’s own determination. Further, it is argued that the Appellate Division, Second Department, has recently foreclosed this area of expert testimony by ruling in People v Wright (161 AD2d 743) "that the reliability of eyewitness identification is not a proper subject for expert testimony”.
Two issues are thus presented for this court’s determination:
(1) Does the court have authority to permit an identification expert to testify?
(2) If it does, under what circumstances may it exercise such authority?
*556 I
AUTHORITY
The purposed identification reliability testimony of Dr. Buckhout is that of an expert witness. Such testimony does, in a sense, enter upon the jury’s province, since the expert — not the jury — draws conclusions from the facts, which the jury is then asked to adopt. (See, People v Cronin, 60 NY2d 430, 432.) Of course, both sides may cross-examine the opposition’s experts or adduce different opinions through their own qualified witness’s experts (Selkowitz v County of Nassau, 45 NY2d 97, 103). Therefore, the trial court may consider eyewitness identification reliability testimony as a form of expert testimony (People v Beckford, 141 Misc 2d 71). In dealing with the testimony of an expert witness, the normal rule is that "[t]he Trial Judge may determine, in the exercise of sound discretion, when jurors are able to draw conclusions from the evidence based on their day-to-day experience and when they would benefit from the specialized knowledge of an expert” (People v Keindl, 68 NY2d 410, 422). Hence the court, in the exercise of sound discretion, may permit the services of an expert in identification and memory.
II
DISCRETION OF THE COURT
In considering this area of expert testimony, it must be recognized that the Appellate Division has constantly approved the preclusion of such testimony on the theory that such evidence pertains to matters of common knowledge which would not be beyond the ken of lay jurors. (See, People v Gibbs, 157 AD2d 799; People v Foulks, 143 AD2d 1038; People v Slack, 131 AD2d 610.) So it would appear that such testimony would not be appropriate in the normal case. When then may a court exercise its discretion?
The Court of Appeals has laid down no guidelines on this point, but a recent case has indicated that they are considering the reliability testimony issue. In People v Mooney (76 NY2d 827) the court affirmed the nisi prius court’s discretion in refusing to admit the use of such testimony. The court however noted: "[o]n this appeal, we need not decide whether the expert testimony sought to be presented was of the type that could, as a matter of law, properly be admitted. Here, the *557 trial court based its decision to exclude the testimony in the exercise of its sound discretion to which the admission of such evidence would, if legally admissible at all, be entrusted. Our review powers are limited accordingly”. (Supra, at 828.)
Judge Kaye in a strong dissenting opinion deplored the court’s procedural analysis and stated: "The court’s cursory treatment of defendant’s claim has two effects, both undesirable. First, it signals such a broad hands-off approach to the purported exercise of trial court discretion as to render any right of review virtually meaningless. Second, and perhaps even more damaging, it sanctions an unwillingness to deal realistically with the concerns engendered by the growing body of research concerning the reliability of eyewitness identifications.” (Supra, at 828.)
The dissenting opinion analyzed three common reasons for denying this type of relief and found them legally without merit. The first argument against admission of such evidence is that the accuracy of such test has not been accepted by the scientific community. The dissenting opinion felt that such testimony did meet the Frye standards of general acceptance.
The second objection discussed by Judge Kaye was that such expert testimony was cumulative since the defense attorney would go into all relevant factors pertaining to identification such as time, distance and lighting conditions. The minority opinion reasoned that a trained expert could "provide the jury with a general analytical framework for evaluation of the eyewitness testimony, by presenting scientific data concerning certain factors involved in perception and memory.” (Supra, at 831.)
Finally, the dissenting opinion considered the argument most frequently advanced in the Appellate Division, the fact that such testimony was not beyond the ken of jurors. Judge Kaye challenged this view and pointed out that scientific evidence has demonstrated many misconceptions on the subject of memory among lay people. Also it was further noted that even if the jury did have a general awareness of this field, the New York courts have recently been permitting expert testimony in dealing with general psychological evidence, such as "the rape trauma syndrome” and hypnosis. Judge Kaye concluded by indicating that a trial court’s discretion should be based on "the result of * * * discretionary assessment of the probative value of the testimony in relation to the facts of this case.” (Supra, at 833.)
*558 III
APPLICATION OF THE LEGAL PRINCIPLES
Summarizing the above legal principles, this court finds:
(1) The testimony of an expert witness in the field of memory and perception is a matter of discretion which should be determined by the facts of each individual case.
(2) This discretion is not to be applied routinely and is clearly not applicable to the average case since the issue of identification is within the scope and understanding of the normal juror.
(3) Such a witness may be utilized only after a discretionary assessment of the probative value of such testimony is made in relation to the facts of the specific case.
Applying these broad rules to the present case, this court finds that the defendant seeks the services of Dr. Buckhout based on two theories. The first is that such services should be provided on constitutional grounds; the second is that the identification in this case rests upon a single eyewitness and such a situation would be assisted by the professional services sought.
As regards the first claim, the defendant maintains that a failure to grant this application would result in a denial of the equal protection of the law which is guaranteed by the 14th Amendment. This view is supported by the fact that several Federal courts have permitted identification reliability testimony. (See, United States v Downing, 753 F2d 1224 [3d Cir]; United States v Smith, 736 F2d 1103 [6th Cir].) Similarly, defendant argues that other State courts have permitted similar relief citing People v McDonald (37 Cal 3d 351, 690 P2d 709) and State v Chappie (135 Ariz 281, 660 P2d 1208). It is now reasoned that the denial of such expert testimony in the courts of New York violates the defendant’s fundamental constitutional rights.
A review of the above cases finds no basis to support the view that this form of expert testimony is protected by the 14th Amendment. All the cases hold that such testimony may have value, but no constitutional ramifications were explored. Nor has the defendant submitted any reasons in his moving papers to justify his constitutional violation theory. This being the case, the court finds no merit to this claim.
The second reason advanced is that this case mainly rests *559 upon the testimony of one witness and such a situation presents dangers that an innocent person may be found guilty. In considering this argument, it is true that our courts have realized the possibility of misidentification inherent in one witness’ situations and have indicated that such testimony should receive "special scrutiny” (People v Regina, 19 NY2d 65, 69). However, even if the People intended to rely mainly on one eyewitness, this is still not a sufficient basis for presenting a reliability expert. If that were so, a substantial portion of all trials would be free to utilize such expert testimony. Rather there must be a showing of need based on the special facts of this situation.
The present case does not deal with a viewing that "was quick”, indistinct or made on the city streets at night (see, People v Beckford, supra, at 77). Rather the witness in this action allegedly observed the defendant in a restaurant under subdued, but adequate lighting. The eyewitness is of Asian ancestry as is the defendant. She perceived the defendant talking to a manager, then saw him as he turned to her and started shooting at her table. Testimony indicated that she was able to observe the defendant for approximately 20 seconds.
Based on these facts and the lack of specific reasons which would establish how the testimony of a trained psychologist would benefit the jury in this case, the court finds insufficient basis to grant the relief sought. The application to appoint Dr. Robert Buckhout, a psychologist, to testify is denied in all respects.